# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LIONEL VELEZ and VANESSA GUADALUPE,

                  Plaintiffs,

v.

PRIMEFLIGHT AVIATION SERVICES INC.,

                  Defendant.

Case No. 19-CV-1056-JPS

**ORDER**

      Plaintiffs, former employees of Defendant, bring this collective and class action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and Wisconsin state law, Wis. Stat. § 109.01 *et seq.* and Wis. Admin. Code § DWD 274 *et seq.*, for Defendant's alleged failure to pay its employees for all of the hours they worked and its improper denial of overtime payments. (Docket #1). Defendant contends that Plaintiffs previously agreed to arbitrate any disputes arising out of their employment, and has accordingly filed a motion to dismiss this case and compel arbitration. (Docket #4). Plaintiffs oppose the motion on multiple grounds, including that they never actually agreed to arbitrate. For the reasons explained below, Defendant's motion will be denied.

      Defendant requests dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), but the correct procedural vehicle is Rule 12(b)(3), which allows dismissal for improper venue. *Auto. Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007); *Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 606–07 (7th Cir.

2003). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16, "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA embodies Congressional policy favoring enforcement of arbitration agreements. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). But this policy does not circumvent the need to prove that an agreement to arbitrate was reached. *Bigger v. Facebook, Inc.*, No. 19-1944, 2020 WL 401804, at *4-5 (7th Cir. Jan. 24, 2020).

To be entitled to an order compelling arbitration, the moving party must prove that (1) a valid agreement to arbitrate exists, (2) the dispute falls within the scope of that agreement, and (3) the plaintiff has refused to proceed to arbitration on that agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Defendant maintains that all three elements are present here. First, Plaintiffs entered into arbitration agreements when they were hired. Specifically, Defendant claims that Plaintiffs filled out electronic forms as part of the onboarding process, which included an arbitration provision that they were required to electronically sign. Second, Plaintiffs' claims are clearly covered by the arbitration clause, which expressly applies to claims for unpaid wages and overtime. Third, Plaintiffs have not, of course, agreed to arbitrate.

Plaintiffs respond by asserting, *inter alia*, that they did not meaningfully assent to the arbitration clause. They note that Defendant's explanation of the onboarding process is only a description of Defendant's general policy, not Plaintiffs' actual experience. Plaintiffs aver that their onboarding process was different. It was administered by Defendant's secretaries, who had complete control of the computer as various forms and documents came onto the screen. The secretaries would occasionally ask

Plaintiffs for information to input into the forms that appeared but would move through the screens far more quickly that Plaintiffs could read and consider the information displayed. This was true of the arbitration agreement, which Plaintiffs did not read or sign and which the secretaries did not describe to them.

When disputes of fact arise in the context of a motion to compel arbitration, the FAA directs that the Court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Prior to reaching trial, however, the summary judgment standard applies. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). The party opposing arbitration must raise genuine and material disputes of fact in order to warrant a trial. *Id.* Plaintiffs maintain that they have met this standard and are entitled to a trial on whether they formed an arbitration agreement.

In reply, Defendant does not dispute Plaintiffs' testimony regarding their personal onboarding experiences. Instead, Defendant suggests various reasons by which they may be bound to the arbitration agreement even if their story is true. First, Plaintiffs passively allowed the secretaries to complete the onboarding process and did not ask them to slow down or to print out any forms that flashed on the screen. Second, even without Plaintiffs' genuine signatures on the contract, their continued employment constituted acceptance of the arbitration agreement. Third, Defendant's employee handbook references arbitration, giving Plaintiffs notice of the agreement, and again suggesting that they should be held to have indirectly accepted the agreement.

The Court finds that, on the record presented, no summary trial on contract formation is necessary. Plaintiffs have presented undisputed testimony that they did not meaningfully assent to the arbitration

agreements. Defendant's only evidence is of its general onboarding policy. It does not present direct evidence that Plaintiffs' version of events is false. Defendant has not even attempted to demonstrate that the general onboarding policy was actually applied in Plaintiffs' cases. A trial is therefore unnecessary. The evidence demonstrates that the parties did not reach an agreement to arbitrate.

Defendant's arguments to the contrary lack merit. First, Defendant's position on Plaintiffs' passivity is circular and unpersuasive. How could one expect Plaintiffs to take a more active role in the onboarding process when they had no control over the computer which governed that process? More importantly, Plaintiffs never saw the arbitration agreement and its existence was not noted by the secretaries. How could Plaintiffs have been aware of the need to stop the process and carefully review the agreement? Additionally, Plaintiffs could not have authorized the secretaries to sign an arbitration agreement that they never knew existed.

Second, Plaintiffs' continued employment did not constitute assent to the arbitration agreement. This is more accurately a request for the application of estoppel, which is a method by which Plaintiffs could be held to an arbitration agreement they did not sign. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Defendant bases its estoppel argument on an assumption that Plaintiffs were aware of the arbitration agreement's existence because it flashed onto the computer screen at some point. Plaintiffs categorically deny this. Even taking this erroneous assumption as true, Defendant lacks legal support for the proposition that continued employment reflects acceptance of the arbitration agreement. Defendant's only citation on the point is to an inapposite district court case, *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863 (E.D. Wis. 2006).

*Tickanen* found that credit card holders could be bound to an arbitration agreement they did not sign because the card issuer sent them notice of an arbitration provision being inserted into the cardholder agreement. *Id.* at 867. The court held that "plaintiffs accepted the agreement by their failure to take affirmative action to not accept the agreement." *Id.* Unlike *Tickanen*, Plaintiffs here were not given what was in essence an opportunity to opt-out of the arbitration agreement.

Defendant may rejoin with its third argument—the employee handbook's reference to arbitration. That response fails for two reasons. First, the handbook argument is new to Defendant's reply brief, though it could have been raised in the opening brief.[1] It is, therefore, waived. *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). Second, Defendant's position has dubious merit, in any event. The handbook's reference to arbitration is vague, particularly with respect to what claims might be covered by the arbitration agreement.[2] Without

---

[1] Defendant's opening brief contains a scant three-and-a-half pages of argument. (Docket #5 at 4-7). Defendant therefore had ample space to discuss any and all evidence which would support its position that the arbitration agreement should be enforced. Defendant's strategic choice to wait to raise new evidence in reply was a poor one.

[2] The handbook states:

> PrimeFlight does enter into arbitration agreements with employees whose date of hire is after December 31, 2011, and those agreements are intended to be binding contracts between PrimeFlight and its employees. Any policies or policy statements related to the resolution of disputes by arbitration should be interpreted in accordance with the parties' intent that the arbitration agreement is a binding and enforceable contract pursuant to the [FAA] and to applicable state and local laws.

(Docket #16-2 at 5). While this paragraph suggests the existence of arbitration agreements, it gives no indication of what those agreements are meant to govern.

Plaintiffs having seen the arbitration agreement during the onboarding process, the handbook would not shed meaningful light on the existence or scope of the agreement with respect to Plaintiffs and their specific claims in this case.

Defendant's final relevant argument is that Plaintiffs cannot contest the formation of the arbitration agreements in this court, because the agreements themselves delegated authority to decide the formation question to the arbitrator. *See* (Docket #5-1 at 4). This position is based on what the Court hopes is an innocent misreading (rather than a deliberate misconstruction) of a recent Supreme Court case, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524 (2019). Contrary to Defendant's view, *Henry Schein* does not stand for the proposition that parties can agree to have the arbitrator determine whether an agreement to arbitrate was actually made. Rather, the Supreme Court addressed how courts should approach the common scenario where parties agree to delegate to an arbitrator the decision on whether a particular claim is covered by an arbitration agreement (arbitrability). *Id.* at 529. *Henry Schein* did not eliminate courts' role in deciding whether an agreement to arbitrate—*i.e.* contract formation—was actually reached. *Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st Cir. 2019); *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 126 (2d Cir. 2019); *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).

---

The paragraph might be more useful if a copy of the arbitration agreement had been provided with the handbook. However, as it stands, the paragraph is no substitute for evidence that Plaintiffs actually reviewed and signed the arbitration agreement during the onboarding process.

In light of the foregoing, the Court must deny Defendant's motion to compel arbitration and to dismiss this action. The Court will also deny as moot a number of motions from Plaintiffs seeking to inject new legal or factual arguments into the briefing on the motion to dismiss. (Docket #17, #23, and #24). Finally, the Court will grant a motion to seal filed by Plaintiffs seeking to keeping certain of Defendant's documents confidential. (Docket #22).

Accordingly,

**IT IS ORDERED** that Defendant's motion to compel arbitration and dismiss (Docket #4) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' motions for leave to file a sur-reply (Docket #17) and to supplement the record (Docket #23 and #24) be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that Plaintiffs' motion to seal (Docket #22) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 4th day of February, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge